[No. 1348-3.    Division Three.    April 20, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD COPELAND, ET AL, *Appellants.*

*Donald W. Schacht* and *McAdams & Schacht,* for appellants (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* for respondent.

GREEN, J.—Defendants were convicted of assault in the first degree. They appeal, contending the court erred in refusing to suppress a letter written by defendant, Ronald Copeland, to the victim of the assault.[1] We affirm.

On June 13, 1974, Theodore Kelley, an inmate at the Washington State Penitentiary, was seriously stabbed. That same day, the defendants who were suspected of committing the stabbing were placed in maximum security. A few days later Mr. Copeland wrote the following letter to the victim who was in the prison's hospital ward:

Dear Bro.

How's everything? I'm sorry that Dennis and I split after helping you get up! But when we seen how bad you was hurt! We thought you was almost dead! And with my and his records! We could'ent afford to be in a cell with a dead man! So thats why we panic'd and left you! How was we to know that it must've just happened before we got there! Anyway I got this cutt on me from Denny and me playing around with his wood carving set! So they think Dennis and I had something to do with you getting cutt. I know your not going to tell them who did it! I would'ent ask you too! But would you explain to them that me and Dennis had nothing to do with it!

Cause you know how they are! they think were guilty until proven innocent! Next time you have any hassle's or conflict with someone! Let me know and I'll do what I can to help you! Hope you are better now and keep yourself together!

Love always
Bro. Rowdy

This letter was placed in a sealed envelope addressed to "Ted Kelley, Hospital Ward, P. O. Box 520, Walla Walla, Wash. #99362." The upper left-hand corner of the envelope contained Mr. Copeland's name, serial number, and return address, "P. O. Box 520." Mr. Copeland handed the envelope to a prison guard who took it to Superintendent B. J. Rhay. Mr. Rhay opened the letter, read it, and delivered it to a Walla Walla detective who was investigating

---

[1]The statement of facts on appeal contains only a record of the suppression hearing. The evidence adduced at trial is not before us.

the stabbing. The following day, investigating officers met with Mr. Copeland. After reading the *Miranda* warnings to him, they questioned Mr. Copeland about the stabbing. When he denied knowledge of the stabbing, they confronted Mr. Copeland with the letter. He immediately objected to the seizure of the letter and requested counsel. At the suppression hearing, he testified that he expected the letter to go through the postal service and to be delivered to the victim without being read by the prison administration.

The question presented by this appeal is succinctly stated by defendants in their brief:

> Was the censorship of the correspondence by Superintendent Rhay an unconstitutional abridgment of appellants' [defendants'] First Amendment right and its use therefore illegal and entitled to exclusions?

First, defendants contend that *Procunier v. Martinez*, 416 U.S. 396, 40 L. Ed. 2d 224, 94 S. Ct. 1800, 1811 (1974), compels an affirmative answer to this question. We disagree.

█ *Procunier* was a class action in behalf of inmates of California penal institutions challenging the constitutionality of certain state prison regulations relating to censorship of prisoners' incoming and outgoing mail. The court recognized that:

> [T]he legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence. . . . Our task is to determine the proper standard for deciding whether a particular regulation or practice relating to inmate correspondence constitutes an impermissible restraint of First Amendment liberties.

*Procunier v. Martinez, supra* at 412-13. The court held that "censorship of prisoner mail is justified if the following criteria are met":

> *First*, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. . . . [Prison officials] must show that a regulation authorizing mail

censorship furthers one or more of the substantial governmental interests of security, order and rehabilitation. *Second,* the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. . . . This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty.

(Italics ours.) *Procunier v. Martinez, supra* at 413-14.

For purposes of defendants' contention, we assume without deciding, that Mr. Copeland's communication was a letter and that *Procunier* governs its interception and use. Given that assumption, we are unable to find that the interception of the letter violated the criteria set forth in *Procunier.* In light of Superintendent Rhay's responsibility, it cannot be denied that a substantial governmental interest in security and order existed and justified the interception and opening of the letter. With respect to the superintendent's responsibility toward the victim, Mr. Rhay testified:

Q What responsibility do you feel you have as Superintendent of the Washington State Penitentiary to an individual that has been stabbed like Mr. Kelley?

A To see that everything is done medically to sustain his life and, thereafter, protect that life from further harm.

Q You say "to protect that life from further harm." I think most of us are familiar with the penitentiary but for the record, what are the problems with a man that has been stabbed and is still alive in the institution?

A For one thing, he becomes a threat to whoever it was did the stabbing and he has to be protected and his life maintained for that reason.

He further testified that he opened the letter because it was written by a suspect to a victim; that he knew that witnesses are influenced in their testimony by other inmates through duress, threat, or otherwise; and it was his duty to rule out any possibility of further harm to the victim. In

our view, any communication from a suspect to a victim in a prison situation is highly suspect and demands the attention of prison officials.

Defendants contend that Mr. Copeland was not afforded reasonable notice and opportunity to protest the interception or censorship of the letter as required by *Procunier*. We find no merit to this contention. In this situation, the suspect who hands such a communication to the guard for delivery to the victim should reasonably expect that it will be opened and read by prison officials. Here, defendant was notified the letter was not delivered but had been opened by the superintendent and delivered to investigating officers. At that point he registered a protest without avail and was accorded a suppression hearing in the trial court and now a review on appeal. It can hardly be contended that he has not been accorded procedural due process.

We hold that *Procunier* did not require suppression of the intercepted communication.

■ Secondly, defendants contend that because the interception violated the Washington Administrative Code the communication should be suppressed. We disagree.

Assuming arguendo that the communication was an "outgoing letter," an issue we do not decide, the interception was permitted under the following portion of WAC 275-96-035:

(3) Outgoing letters shall not be opened unless:
(a) The superintendent has probable cause to believe that the content of a specific letter presents a clear and present danger to institutional security . . .

When a suspect writes to a victim, it falls clearly within this provision which authorizes the opening of letters. As the trial court noted in its decision:

Where a man has been stabbed, and two suspects are being held in maximum security, then one of the suspects writes a note to the injured individual, the warden would be derelict in his duty if he did not protect the man.

Such protection goes beyond the time the victim is in the

hospital ward and extends to the time the victim reenters the prison population. It was reasonable for the superintendent to suspect that the communication contained a threat against the victim or other proposed criminal activity. Consequently, since the superintendent had probable cause to believe the communication presented a clear and present danger to institutional security, it was properly opened. Moreover, the superintendent's conduct meets the *Procunier* criteria of furthering the substantial governmental interests of security, order and rehabilitation, and is unrelated to the suppression of expression.

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied May 25, 1976.

Review denied by Supreme Court August 31, 1976.